Final case this morning, Reliford v. Bright House Networks. Good morning, Your Honors. May it please the Court. My name is Tekina Thompson-Sandiford, and I represent the appellant, Margie Reliford. We challenge the District Court's ruling on Bright House Networks' motion for summary judgment on Mrs. Reliford's Title VII retaliation claim. The District Court erred in granting Bright House's motion as there was sufficient evidence that Bright House retaliated against Mrs. Reliford by increasing her workload and then by firing her after she made internal complaints of discrimination to HR and after she filed a complaint with the EEOC in May of 2015. The District Court also erred as there were factual disputes that should have been resolved by a jury. As I previously stated, Mrs. Reliford was engaged in two protected activities, the first being internal complaints of discrimination that she reported to HR, and also the second being her filing of a claim with the EEOC. It was these two acts that resulted in Mrs. Reliford suffering from adverse employment actions, such as the increased workload and her termination. With regard to her first protected activity, the internal complaints of discrimination, Mrs. Reliford contends that after she reported that her supervisor was discriminating against her, that her supervisor then increased her workload. Now let me just go back here for a little bit, Your Honors. Mrs. Reliford in 2009 was working for Bright House as a work order resolution representative, and then in June of 2010 she was transferred to a different department, the sub-billing account department, at which time her title also changed to a sub-billing account representative. Mrs. Reliford, when she made that transfer, her supervisor then became Christy Piper, and Mrs. Reliford contended that Mrs. Piper was treating her differently on the basis of race. As a result, Mrs. Reliford then went to HR several times complaining about Mrs. Piper's behavior towards her, and she told HR that she was considering going to the EEOC with her complaints, and then by April of 2014 she decided that she was going to, in fact, go to the EEOC and reported that to HR. After that, Mrs. Piper then began to give Mrs. Reliford more work to do that she could not complete within her normal work schedule, and Mrs. Reliford testified that she actually had to work through her lunch and other breaks to get through her workload, as Mrs. Piper would not allow her to have overtime. The factual dispute comes in because Mrs. Piper testified that the reason why she gave Mrs. Reliford more work was because she had some employees to leave, and she needed to reassign some of their work assignments to other employees, and Mrs. Reliford was one of them. However, Mrs. Reliford's testimony is that there were other employees. I'm sorry, that Mrs. Piper took work from other employees who were currently working at Bright House and put it on her plate instead of just leaving the work where it was. So it wasn't necessarily because that there were employees who left and she needed to reassign work, but that she actually did, in fact, take work from other employees and gave it to Mrs. Reliford. Mrs. Reliford also testified that there was actually a co-worker of hers who knew that she had too much work to do and would actually sneak so that Mrs. Piper did not see her or know, and she would sneak and help Mrs. Reliford out with her work assignments as she knew that Mrs. Reliford could not complete it. She had an overwhelming amount of work, and she could not complete it within her normal work schedule. Also, another dispute of fact that came in was Mrs. Reliford, I'm sorry, Mrs. Piper testified that she wasn't even aware of Mrs. Reliford's complaints to HR that she felt like she was being discriminated against. But there are factual disputes in the record that, again, should have survived summary judgment. Although Mrs. Piper testified that she was not aware, Mrs. Reliford testified that Mrs. Piper actually made references to her meetings with HR. In fact, she told Mrs. Reliford, you can go to HR if you want to. HR is tired of you. The HR representative that she was speaking to, Susie, is tired of you, and she wants you fired. That is enough to create an inference that Mrs. Piper was certainly aware of Mrs. Reliford's complaints to HR with her discrimination claims. There were also meetings that Mrs. Piper sat in on, and in fact, Mrs. Reliford testified that at one of the meetings in 2014, Mrs. Piper was present where she said she was going to, in fact, go to the EEOC. So to the extent that Mrs. Reliford says one thing and Mrs. Piper says another, there's certainly a factual dispute that should have been taken before a jury and not resolved in summary judgment. There was no factual dispute, though, that ANP eliminated all the positions like hers in Indiana, was there? Your Honor, yes, and that takes me to my next point. So, yes, and I'll move there, Your Honor. So, yes, there is no factual dispute that there was some downsizing that took place by ANP or Bright House Networks, and therefore there were certain positions eliminated. One of those positions was a work order resolution representative. Mrs. Reliford's title, however, was a sub-billing account representative. And what all the facts show, and particularly the two documents from Bright House show, was that Mrs. Reliford was, in fact, a sub-billing account representative, and she had held that position for six years before she was terminated by Bright House. Mrs. Piper, her supervisor, even testified that Mrs. Reliford was, in fact, a sub-billing account representative. Mrs. Reliford obviously testified that she was a sub-billing account representative. And, again, the documents from Bright House say that she was a sub-billing account representative. But when it came time to when the downsizing took place, then Bright House said, oh, in our system you're actually still a work order resolution representative, and they got rid of Mrs. Reliford. But there are no documents that have been produced that suggest that Mrs. Reliford was, in fact, a work order resolution rep. There's just only a statement from H.R. that says that she was a work order resolution representative. But, again, the two documents from Bright House were from, suggest that she, or not suggest, actually state that she was, in fact, a sub-billing account representative, and therefore she should not have been one of those positions that was eliminated. And, Your Honor, I just want to point out that that charge of elimination was after she did, in fact, file the claim with the EEOC in May of 2015. I understand you're in your rebuttal time. Yes, Your Honor. I'll just give a couple more seconds and then I'll sit down. Thank you very much. But that was after she made her EEOC charge in May of 2015, which Mrs. Piper does not dispute. She does say that she knew about that EEOC charge, and then several months thereafter Mrs. Reliford was terminated on grounds that she was a work order resolution representative, when, in fact, all of her, all the documents and her own supervisor testified that she was actually a sub-billing account representative. Thank you, and I'll reserve the rest of my time for rebuttal. Thank you, Counsel. Mr. Wiley? Good morning, Your Honors. May it please the Court, my name is Craig Wiley. I'm from the Indianapolis office of Jackson Lewis, and we represent the Appelli Advanced Newhouse Partnership, or Bright House Networks. This is a Section 1981 Title VII case alleging retaliation in the employment context. Ms. Reliford alleges three retaliatory acts, that she was subjected to verbal abuse, that her workload was increased in September 2014, and that she was terminated in March 2016. Unfortunately for Ms. Reliford, not only does she fail to establish the three-part test that this Court has established to establish a retaliation claim, she also relies on arguments that are either waived or are not supported by record evidence. The first retaliatory act, and maybe I'm hearing a concession regarding the verbal abuse, at summary judgment, Ms. Reliford states that she was subjected to being yelled at by her supervisor, Ms. Piper, in one-on-one meetings, that Ms. Piper told her to quit, and then threatened to fire her on several occasions. At the district court level, Ms. Reliford acknowledges that these were not adverse employment actions, and at least in the briefing it appears that she tries to resurrect these claims on appeal. There's two ways to look at this. Either they've been abandoned at the district court, or they're waived before the Seventh Circuit. So let's talk about the second retaliatory act. That her job duties were increased in September of 2014. Piper also claims that, as counsel stated, that Piper knew of her internal complaints prior to September of 2014. Again, these arguments are waived. They were raised for the first time on appeal and cannot be brought before this Court. In any event, there are two undisputed facts. Number one, the human resource manager, Suzy Eman, did not tell Piper that Ms. Reliford had said she had contacted the EEOC in May of 2014. And it's undisputed that Ms. Eman ever told Ms. Piper that Ms. Reliford had made complaints about race discrimination. Even if Ms. Reliford, even if this argument was concluded before the Court, and Ms. Reliford had knowledge that Ms. Reliford had made complaints prior to September 2015, there's no evidence that this was the reason why her workload was increased. Ms. Reliford makes the argument before the Court that an increased job load is an adverse employment action. That's not the proper law in this circuit. The one time that the Court has even tangentially addressed this argument was in the case of McKinsey v. Illinois Department of Transportation at 92 Federal 3rd 473. The Court said, in that case, the plaintiff had alleged that her workload had been doubled. But the Court decided that, decided the case on the causation issue, not whether the increased workload was an adverse employment action. Now, we understandably, the Court has defined adverse employment action broadly. But the facts show that in September 2014, there were two employees who unexpectedly left the department. One went on a leave and never came back. The other was promoted out of the department. So what the testimony shows is that these duties were evenly distributed among the employees in the sub-billing department. That was missing in this testimony. As far as trying to show pretext on this issue, Ms. Reliford states that she had the largest job load of all the sub-billing representatives. Ms. Reliford has no personal knowledge to make this statement. The only person who does is Ms. Piper, her supervisor, who again testified that she evenly distributed these duties. Ms. Reliford also states in the briefing that these individuals were left at the department months before September of 2014. Again, this argument is waived because it was not made at the District Court and should not be considered. It's important to note that ultimately, once Ms. Reliford made her complaints that she was given a heavy workload, she was ultimately relieved of some of these duties. The District Court properly held that there is no evidence to demonstrate that Piper had assigned additional work duties in a retaliatory act. Now the last one, her termination. In March of 2016, she was terminated. The job was eliminated based on automation, and let me explain to you how this works out. When a technician comes to your house, you order cable TV, and your initial order is you want HBO. But you get there and you say, you know, I think I want Cinemax and Showtime as well. So at that time before the job was automated, the technician would fill out a form. He would take it back to the facility, and a work order resolution representative like Ms. Reliford would manually enter the data so the person would be properly billed. Well, based on new technology, in 2016, a technician can go to your house, and if you made that change, they could do it in an automated fashion without having to fill out the form. That's why the job was eliminated. There's this issue about the term work order resolution representative and sub-billing representative. What happened was in mid-2010, there were some reorganizations at some of the departments in the Apples facility. The work order resolution department was merged with the subscriber accounting department. And at that time, Ms. Reliford, who held the job title of work order resolution representative, her and two other people went to this new department, and Ms. Piper became her supervisor. And what happened is Ms. Piper met with the work order resolution representatives and the sub-billing reps, and they cross-trained on each other's duties. So they essentially were performing the same duties, but they held different job titles. It's key to note that the work order resolution representative and the sub-billing representative were performing the same jobs. But within the company's HR and payroll system, Ms. Reliford and one other person retained the job of work order resolution representative. Now, there's the issue with Amy Morgan. On the same day that Ms. Reliford was discharged, so was Amy Morgan. Amy Morgan is Caucasian, and she had two more years of seniority over Ms. Reliford. It's also undisputed – it's an undisputed fact that Ms. Piper was not the decision-maker in this termination. It was made at the corporate level. As far as causation and timing, Ms. Reliford filed her charge on May 11, 2015. She was discharged 10 months later, destroying any type of causation argument. There's this issue, again, about the 2014 performance evaluation in which Ms. Reliford is identified as a sub-billing representative. It's a red herring. Within the company's corporate system, within their HR and payroll, she and Ms. Morgan were continuing to be identified as a work order resolution representative. Just because Ms. Piper noted on a job – on a performance evaluation that she was a sub-billing representative is not dispositive of the case. What's dispositive is what she was identified in the company's HR and payroll systems. There was an argument made in a brief that Ms. Piper thought that Ms. Reliford's job had been changed in the system. Ms. Piper did not know exactly what was in the payroll system. That's why she had incorrectly identified her on the 2014 performance evaluation as being a sub-billing representative. There's also an issue about – there's some testimony that was allegedly made that Ms. Piper had stated that the job title was not important to the termination decision. She cites to page 48 of her deposition. Well, page 49 states the following, that Ms. Reliford's job was eliminated due to automation, which we just talked about, that both Ms. Morgan and Ms. Reliford continued to retain the job title of work order resolution representative, and that she did not know – she did not know why the positions had not changed in the system, and that they were continuing to be identified as work order resolution representatives. As far as retaliatory motive, this is a company that allowed Ms. Reliford to work on Saturdays and leave early on Thursdays to work a second job at Best Buy. So there's certainly no retaliatory motive. There's no pretext as far as the reason for termination. Ms. Reliford testified in her deposition that prior to her filing the EEOC, she went to the EEOC on four separate occasions. And on those four separate occasions, the EEOC representative would not allow her to file a charge of discrimination because, quote, she did not have a case. Now, rarely will you hear a company say that the company agrees with the EEOC, but the company does agree with the EEOC in this instance. The district court got it right. This decision should be affirmed by this court. Thank you very much. Thank you, counsel. A couple of minutes and rebuttal. Thank you, Your Honor. I just want to point out a couple of things. First of all, with regard to the job termination, counsel focused on the reason why the job was eliminated, period. The focus today is why was Mrs. Reliford's job eliminated? Was it for retaliation or for some non-retaliatory reason? And as far as all the evidence suggests, it certainly could lead to the inference that Bright House did retaliate against her because Mrs. Piper testified that she should have been a sub-billing rep. She was, in fact, a sub-billing rep, but it was just not listed in Bright House's system. For whatever reason, and she doesn't know why because that's not her role or function to change that. Mrs. Reliford was under the impression and testified that she was, in fact, a sub-billing representative for the past six years. And last, those Bright House documents. These are documents that are from the company. These aren't documents that are created by Mrs. Reliford. These are two documents from Bright House that says that her current title in 2014 was that she was a sub-billing account representative. But when it came time to terminating Mrs. Reliford, then they said she's a work order resolution representative. And again, the only piece of evidence we have is an affidavit from Susie Eman, the HR rep, but no other document that has been produced that says that Mrs. Reliford was, in fact, anything other than a sub-billing account representative. As far as the work road increase, that certainly is an adverse employment action. It could certainly dissuade a worker from going to HR if Mrs. Reliford cannot get her work done in the hours that she is assigned to work. She has to work through lunch. She has to work through breaks. And she has to solicit the help of other employees to help her get through it. So there certainly is an adverse employment action where she could be prevented from or discouraged from going to HR with any more complaints of discrimination. Lastly, with regard to the timing, yes, Mrs. Reliford was fired approximately 10 months later. However, that is not dispositive. That just goes to the evidence. And taking the evidence as a whole, I think the record does reflect that a jury could find that she was retaliated against for her complaints. Thank you, Your Honors. Thank you, Counsel. Thanks to both counsel on the cases taken under advisement.